1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEPHANIE CROSSLEY TAYLOR,

Plaintiff,

v.

PUBLIC STORAGE,

Defendant.

CASE NO. C10-2103RSM

ORDER ON DEFENDANT'S MOTION
FOR PARTIAL SUMMARY
JUDGMENT

This matter is before the Court for consideration of defendant's motion for partial summary judgment. Dkt. # 56. Plaintiff's opposition to this motion (Dkt. # 65) was filed late, but it shall nevertheless be considered by the Court. The Court deems oral argument on this motion unnecessary and shall, for the reasons set forth below, grant the motion.

FACTUAL BACKGROUND

This case arises from the July, 2007 auction of personal property stored in defendant's self-service storage facility in Seattle by plaintiff. Stephanie Taylor filed this action asserting causes of action for breach of contract, conversion, fraud, intentional infliction of emotional distress (outrage), negligence, negligent infliction of emotional distress, violation of various state and federal criminal

ORDER - 1

1   statutes, violation of the Washington Consumer Protection Act, RCW 19.86, and violation of the

2   Washington State Self-Service Storage Facilities Act, RCW 19.150 *et seq*.  Dkt. # 1.  The case was

3   originally filed in United States District Court for the Eastern District of Wisconsin, and transferred to

4   this court upon motion by defendant.  Dkt. # 31.

5          Defendant has now moved for partial summary judgment, asserting that plaintiff's claims of

6   negligence, conversion, fraud, and outrage should be dismissed, and that liability on plaintiff's

7   remaining claims be limited to $5,000 pursuant to the contract in force between the parties.   The

8   following factual recitation summarizes relevant facts presented by the parties in support of, and in

9   opposition to, this motion.

10         Plaintiff signed a rental agreement with defendant for a self-storage unit on January 25, 2007,

11  initialing each page of the 2 1/2-page agreement.  Declaration of Alison Herber, Dkt. # 57, Exhibit A.

12  Plaintiff listed a Seattle address on Roy Street and a phone number for contact, and also provided an

13  alternate name, address, and phone number for Sandra Taylor, her mother.  *Id*.  A "change of address"

14  provision in the agreement required that plaintiff notify defendant in writing of any change in her place

15  of residence, or a change in the alternate's name or address, within ten days of the change.  *Id*., ¶ 9.

16         The agreement provided for a rental fee of $137 per month for the unit, paid in advance on the

17  first of each month, plus additional late fees for late payment.  *Id*.  In the event of non-payment, the

18  agreement provided that property stored in the unit would be subject to a lien in favor of defendant.

19         If any part of the rent or other charges due hereunder remain unpaid for six consecutive days,
20         Owner may place its lock on the Premises and deny occupant access.  The property, except
           boxes clearly labeled "personal property" and/or "personal effects" may be sold by Owner
21         to satisfy the lien if the rent or other charges due . . . remain unpaid for fourteen (14)
           consecutive days, . . . and Occupant agrees to label any boxes containing personal papers or
22         personal effects as such.

23  *Id*., ¶ 6.  Plaintiff initialed this paragraph, acknowledging that she read, understood, and agreed to it.  *Id*.

24         The agreement stated that "Occupant agrees that under no circumstances will the aggregate value

25  of all personal property stored in the Premises exceed, or be deemed to exceed, $5,000."  *Id*., ¶ 3.  The

26  paragraph specifically advised that the storage unit was

27         not suitable for the storage of heirlooms or precious, invaluable or irreplaceable property

28  ORDER - 2

such as books, records, writings, works of art, objects for which no immediate resale market exists, objects which are claimed to have special meaning or emotional value to Occupant and records or receipts relating to the stored goods.

*Id.* Plaintiff acknowledged this limitation by initialing the paragraph.

The agreement further limited defendant's liability in the event of loss as follows:

Owner and Owner's Agents will have no responsibility to Occupant or any other persons for any loss, liability, claim, expense, damage to property or injury to persons ("Loss") from any cause, including without limitation, Owner's and Owner's active or passive acts, omissions, negligence or conversion, unless the Loss is directly caused by Owner's fraud, willful injury or willful violation of law. . . . Occupant agrees that Owner's and Owner's Agents' total responsibility for any Loss from any cause whatsoever will not exceed a total of $5,000.

*Id.*, ¶ 5.  Plaintiff also initialed this section, thereby acknowledging that she understood.  *Id.*

On an addendum to the rental agreement, plaintiff acknowledged her understanding that the company was not responsible for any loss to her property stored on the premises, and agreed to insure her property for its full value against all risks.  Declaration of Alison Herber, Dkt. # 57, Exhibit B.  She elected to purchase the lowest level of coverage offered, $2,000, for an additional $8.00 per month.  *Id.*

According to the payment ledger kept by defendant, plaintiff paid the balance of January and the February rent on January 25, 2007.  Declaration of Alison Herber, Dkt. # 57, Exhibit C.[1]  She was late with her rental payments for March and April, 2007, and late fees were applied.  *Id.*  Plaintiff presented payments on April 21 and April 30 to cover these amounts and make her account current.  *Id.*  Her payment on May 4, 2007, for the month of May was the last payment she made.  *Id.*  The property was sold at auction on July 19, 2007, resulting in a credit of $5.45 to plaintiff's account, leaving a balance due of $310.97.  *Id.*

Plaintiff cannot and does not dispute that she fell into default on her payments.  Her claims arise from the timing and contents of the notice of default and auction.  The evidence of record appears in the ledger notes maintained by defendant, together with copies of the notices.  Declaration of Alison Herber,

---

[1] Plaintiff objected to the admissibility of Ms. Herber's declaration and the attached exhibits in an improperly-filed motion to strike, which the Court denied.  Dkt. ## 72, 90.  The Court notes that this and other exhibits attached to the declaration are admissible under Federal Rules of Evidence 803(6) as business records.

ORDER - 3

1   Dkt. # 57, Exhibits D, E, F.  The ledger notes indicate that delinquency notices sent to plaintiff and to

2   her alternate (Sandra Taylor) in March at their addresses of record were returned as undeliverable.  *Id.*,

3   Exhibit D.  A subsequent pre-lien letter sent to the alternate was returned on April 19.  Pre-lien letters

4   sent to both plaintiff and her alternate, again at their address of record, were returned as undeliverable

5   on June 21 and 22, 2007, and notices of the impending sale sent to both Stephanie and Sandra Taylor

6   were returned on July 5, 2007.  *Id.*   Plaintiff had thus failed to keep defendant apprised of her change in

7   her and her alternate's residence address, as required in the rental agreement.   Nevertheless, the ledger

8   reflects that  defendant's employees were in contact with plaintiff, her mother, and friends during this

9   period regarding the impending auction for non-payment.  *Id.*  An employee, C. Thompson, spoke with

10  plaintiff on June 15 to advise her she needed to pay $160 before the company's lock would be removed

11  from the unit.  Friends called on June 27 and June 29 and offered to make up the delinquent payment on

12  behalf of plaintiff.  *Id.*   A friend called on July 12 to say that either she or plaintiff's father would pay

13  the balance owed on July 17 or 18.   Plaintiff's mother called on July 16 to say that she would pay the

14  rent for the unit on July 18.  *Id.*

15        Copies of the "Notice of Lien Sale or Notice of Disposal" were mailed to plaintiff and to Sandra

16  Taylor at their addresses of record on July 2, 2007.  This letter stated that plaintiff's property, other than

17  personal papers and personal effect "so labeled," would be sold after July 16, 2007 to satisfy the lien.

18  Declaration of Jessie Riebe, Dkt. # 58, Exhibit B.   Like previous notices, these were returned as

19  undeliverable.  *Id.*, Exhibit C.  The envelope which was mailed to plaintiff was returned with a sticker

20  indicating a new address for plaintiff, on Third Avenue in Seattle.  *Id.*, Exhibit C.   On July 7, 2007, Ms.

21  Riebe re-mailed the Notice to plaintiff at this new address.  Declaration of Jessie Riebe, Dkt. # 58, ¶¶

22  11-12.  She counted two weeks from that date and wrote "July 20" as the date after which the auction

23  would occur, then changed it to July 19 when she realized that the auction was already scheduled for

24  that date based on the earlier (returned) notice.  *Id.*  A copy of this notice was retained in the file and

25  appears in the record.  *Id.*, Exhibit D.

26        Plaintiff does not present any evidence which would create a factual dispute as to these events.

27  Her declaration filed in opposition to partial summary judgment consists mainly of conclusory

28   ORDER - 4

allegations such as the assertion that "Defendant unlawfully sold/stole my items at an illegitimate auction." Declaration of Stephanie Taylor, Dkt. # 66, ¶ 5. She also states that "Defendant never went through the terms and conditions of the contract with me but rather only explained a minuscule amount about the contract." *Id.*, ¶ 7. With respect to the Notice of Sale, she states,

> [r]egardless of which date the Defendant fraudulently asserts was noted on the Notice of Sale (they have asserted about half a dozen different dates as of their latest filing), the Notice clearly states that the unit will be auctioned **after the date listed on the Notice**. Accordingly, even if the Notice shows July 19, 2007, the Defendant openly admits they auctioned the unit on that date, not after that date.

*Id.*, ¶ 8 (emphasis in original).  Nowhere in the declaration does she state whether she did, or did not, receive any of the written notices or telephone calls, or provide an explanation for her failure to update her address and telephone number as required.

On these facts, defendant has moved for dismissal of plaintiff's claims of negligence, conversion, fraud, and outrage, as well as for enforcement of the limitation on liability. The claims shall be addressed separately.

DISCUSSION

I. Summary Judgment Standard

Summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and ththe movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). An issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The evidence is viewed in the light most favorable to the non-moving party. *Id.* However, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F. 3d 1216, 1221 (9th Cir. 1995). It should also be granted where there is a "complete failure of proof concerning an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to prevent summary judgment. *Triton Energy Corp.*, 68 F. 3d

ORDER - 5

1    at 1221.

2         II.   Analysis

3         A.   Limitation of Liability

4         Defendant asks that the Court enforce the limitation of liability in the rental contract, as agreed

5    to by plaintiff when she initialed the section.  Enforcement of the limitation would bar plaintiff's claims

6    for negligence and conversion, and would limit her damages on other claims to $5,000.

7         Plaintiff in her declaration states that "Defendant never went through the terms and conditions of

8    the contract with me but rather only explained a minuscule amount about the contract."  Declaration of

9    Stephanie Taylor, Dkt. # 66, ¶ 7.  Even viewing this bare assertion in the light most favorable to

10   plaintiff, it fails to release her from the contract which she signed and initialed, paragraph by paragraph.

11   Plaintiff also argues that "[c]ase law indicates that limitation clauses contained in rental agreements are

12   inapplicable."  Plaintiff's Response, Dkt. # 65, p. 5.  Yet she has not cited a single Washington case in

13   support of her argument; instead she cites cases from Wisconsin and Illinois.

14        Washington law applies to plaintiff's claims.  In Washington, a party to a contract can generally

15   limit liability for damages resulting from negligence.  *Eifler v. Shurgard Capital Management*

16   *Corporation,* 71 Wash. App. 684, 690 (1993); citing *American Nursery Products v. Indian Wells*, 115

17   Wash2d 217, 230 (1990).  There are exceptions, where exculpatory agreements have been found to

18   violate public policy.  The factors to be considered in this determination were set forth by a California

19   court and adopted in Washington:

20        Thus, the attempted but invalid exemption involves a transaction which exhibits some
21        or all of the following characteristics. It concerns a business of a type generally thought
          suitable for public regulation. The party seeking exculpation is engaged in performing a
22        service of great importance to the public, which is often a matter of practical necessity
          for some members of the public. The party holds himself out as willing to perform this
23        service for any member of the public who seeks it, or at least for any member coming
          within certain established standards. As a result of the essential nature of the service,
24        in the economic setting of the transaction, the party invoking exculpation possesses a
          decisive advantage of bargaining strength against any member of the public who seeks
25        his services. In exercising a superior bargaining power the party confronts the public with
          a standardized adhesion contract of exculpation, and makes no provision whereby a
26        purchaser may pay additional reasonable fees and obtain protection against negligence.
          Finally, as a result of the transaction, the person or property of the purchaser is placed
27

28   ORDER - 6

under the control of the seller, subject to the risk of carelessness by the seller or his agents. *Eifler*, 71 Wash. App. at 691, quoting *Tunkl v. Regents of the University of California*, 60 Cal. 2d 92 (1963).   This test was adopted by the Washington courts in *Wagenblast v. Odessa School District*, 110 Wash. 2d 845, 851-51 (1988).

The burden is on plaintiff to demonstrate that these factors dictate that the limitation clause in the rental agreement violates public policy of Washington, but she has not done so.   The Court finds in particular that the second factor, that "the party seeking exculpation is engaged in performing a service of great importance to the public" is not present here.   As defendant contends, the self-storage industry is not a service of great importance to the public, or a matter of practical necessity.   "A common thread runs through those cases in which exculpatory agreements have been found to be void as against public policy.  That common thread is they are all essential public services—hospitals, housing, public utilities, and public education."  *Shields v. Sta-Fit*, 79 Wash. App. 584, 589 (1995).   A self-storage facility does not fit within the category of "essential public services;" it is merely a convenience for a portion of the public, mainly those in transit between housing situations who need to temporarily store some of their personal possessions.

Nor was there inequality of bargaining strength.  Plaintiff had other options for storing her possessions if she needed to do so; she could go to a different self-storage company, or store them with her family or friends.  Further, the standardized contract was not a contract of adhesion, as plaintiff was advised of the need to insure her property and was offered insurance.  Under similar facts, Washington appellate court held

> Under these circumstances, we do not perceive a contract of adhesion whereby Eifler was deprived of a fair opportunity to protect the value of his property, and we hold that Shurgard was not precluded from limiting its liability for negligence in the way that it did.

*Eifler*, 71 Wash. App. at 694.

The same analysis applies here.  The Court finds, after considering the appropriate factors under Washington law, that the rental agreement signed by plaintiff is not a contract of adhesion and does not violate public policy in this state.  The limitation of liability shall accordingly be enforced.  Summary

ORDER - 7

judgment shall be granted to defendant on this issue and plaintiff's claims of negligence and conversion shall be dismissed.  Her damages on remaining claims shall be limited to $5,000 where appropriate.

B. Fraud

Defendant has moved for summary judgment on plaintiff's claim of fraud, asserting that plaintiff has not established the requisite elements.  The complaint alleges that the fraud occurred in the last Notice of Sale that was sent to plaintiff, advising that the auction of her possessions would take place "sometime after July 20, 2007."  Complaint, Dkt. # 1, ¶ 39-40.  Actually, as set forth above, the Notice of Sale sent by Ms. Riebe on July 7 had the date of July 19 written over the July 20 date, so this will be deemed the allegation.  Plaintiff contends that she was induced to rely on the representation that the auction would not occur until after that date, but instead it occurred on that date, July 19.  *Id*., ¶ 43.

Under Washington law, "[t]he nine elements of fraud are: (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff." *Vernon v. Qwest Communications Intern., Inc*., 643 F.Supp.2d 1256, 1265 (W.D.Wash.2009), quoting *Stiley v. Block*, 130 Wash. 2d 486, 505 (Wash. 1996).  Defendant advances two arguments in support of summary judgment on this claim: first, that the original Notice of Sale sent on July 2, 2007, giving the date of sale as occurring after July 16, was the effective and legally required notice, and was not false; and second, that if that is not the case, the Notice gratuitously sent by Ms. Riebe with the July 19 date was an innocent mistake made with no intent to deceive plaintiff.  Defendant thus argues in this second assertion that plaintiff cannot meet the fourth and fifth elements of a claim of fraud.

Plaintiff, in opposition, has asked for an opportunity to conduct discovery on this issue, particularly to depose Ms. Riebe.  Pursuant to Fed.R.Civ.Proc. 56(d), where a non-movant shows by affidavit or declaration that it cannot present facts in opposition to a summary judgment motion, the Court may defer a ruling until an appropriate time.  Plaintiff has not met the requirement of showing by

ORDER - 8

affidavit or declaration that she has been unable to discover facts on this issue.[2]  While the Court has been lenient with plaintiff in other ways, such as considering her untimely-filed opposition to this summary judgment motion, it will not excuse this requirement set forth in Rule 56(d).  Accordingly, the Court declines to defer consideration of the motion with respect to the fraud claim.  As plaintiff has failed to show that there is a genuine factual dispute on the fraud claim, defendant's motion for summary judgment shall be granted and the fraud claim shall be dismissed.

C.  Outrage/Intentional Infliction of Emotional Distress

Plaintiff alleges in her complaint that defendant, "by its unreasonable and premature sale of [her] personal property, engaged in extreme and outrageous conduct," causing her to suffer from post-traumatic stress syndrome.  Complaint, Dkt. # 1, ¶¶ 46, 48.  She further alleges that

> [t]his claim is bolstered by the repeated phone calls made by and on the behalf of Taylor to PSA in order to secure her property and pay all arrearages.  A person of ordinary sensibilities would find it extreme and outrageous to sell personal property of another without providing proper notice and time to pay arrearages.  PSA not only prematurely sold Taylor's personal property, but PSA simply refused Taylor's timely arrearage payment.  Furthermore, PSA stated to Taylor that the sale of all her most treasured items was for a mere $5.00.  The entirety of PSA's actions is extreme and outrageous.

*Id.*, ¶ 46.  Defendant has moved for summary judgment on on this claim.

In Washington, the tort of intentional infliction of emotional distress is treated the same as the tort of outrage.  The elements of the tort of outrage are (1)  extreme or outrageous conduct, (2)  intentional or reckless infliction of emotional distress, and (3)  actual result to the plaintiff of severe emotional distress.  *Robel v. Roundup Corp.*, 148 Wash. 2d 35,  41 (2002).   The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Kirby v. City of Tacoma*, 124 Wash. App. 454, 473 (2004), *quoting Grimsby v. Samson*, 85 Wash. 2d 52, 59 (1975).  Liability for outrage does not arise from "mere insults, indignities, threats, annoyances, petty oppressions, or other

---

[2] The declaration of counsel, filed at Dkt. # 66, addresses three different witnesses who would present evidence on issues unrelated to this fraud claim and Ms. Riebe's intent.

ORDER - 9

trivialities." *Id.*   The question of whether certain conduct is sufficiently outrageous to give rise to a

cause of action is ordinarily one for the jury, but "it is initially for the court to determine whether

reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability."

*Dicomes v. State*, 113 Wash. 2d 612, 630 (1989).

Plaintiff has the burden of proof on her claim of outrageous conduct.  As the non-moving party,

she may not simply rest on the allegations of her pleadings, but must set forth specific facts to show that

there is a genuine dispute of material fact.  Fed.R.Civ.P. 56(c);  *Dicomas v. State*, 113 Wash. 2d at 631.

She has failed to do so.  Plaintiff's own declaration sets forth only conclusory allegations such as,

"Defendant unlawfully sold/stole my items at an illegitimate auction" and "Defendant openly admits

they auctioned the unit on [July 19], not after that date."  Declaration of Stephanie Taylor, Dkt. # 66, ¶¶

5, 8.  She states no facts regarding what notice she did receive or when she received it, or explain why

she failed to provide a correct address for contact as required by her rental contract.  *Id.*   Plaintiff's

mother filed a declaration stating "I never received any correspondence from the Defendant on any

occasion whatsoever" and "I never called the Defendant to state that I was fearful that Ms. Taylor was

using drugs or would sell items in her unit to buy drugs," but does not provide any facts regarding her

actual knowledge of the Notice of Sale, or mention her documented telephone contacts with defendant.

Declaration of Sandra Taylor, Dkt. # 67, ¶¶ 6, 7.   A friend provided a declaration stating that "I saw a

Notice from the Defendant that stated Ms. Taylor must pay the arrears on her unit" but he does not say

when he saw the notice or what auction date was stated on the notice.  Declaration of Jon de Leeuw,

Dkt. # 68, ¶ 3.

Nowhere has plaintiff produced any evidence that disputes the facts demonstrated by defendant

that (1) a Notice of Sale with the date of July 16, 2007, as the date after which the unit would be

auctioned, was mailed to both plaintiff and to her alternate at their addresses of record;  (2) both Notices

were returned as undeliverable as neither plaintiff nor her alternate had provided an updated or correct

address for contact;  (3) defendant's employees made numerous attempts to reach plaintiff by telephone

in late June and early July and left messages where possible; (4)  messages regarding the sale were left

ORDER - 10

on plaintiff's mother's answering machine on July 9 and July 11;  (5) friends and relatives of plaintiff, including her mother, called and offered on several occasions (June 27, June 29, July 12, July 13, July 16) to pay the amount due on plaintiff's behalf, on or before July 18, but no such payment was ever tendered; and (6) nowhere in the ledger notes from late June through July 18, 2007 is there any record of a phone call or other contact from plaintiff; she first called on July 20, 2007.  Dkt. # 57, Exhibit D.

Given the extensive record of continued efforts made to reach plaintiff, and the successful telephone contacts with her friends and her mother, together with the fact that plaintiff herself  failed to provide a current address and failed to contact defendant herself until July 20, 2007, no reasonable juror could find conduct sufficiently extreme as to amount to the tort of outrage on the part of defendant.  The conclusion is inescapable that plaintiff herself is responsible for the fact that she did not receive the original Notice of Sale that was mailed on July 2, 2007.  This is not a question on which reasonable minds could disagree.  Further, the calls from her friends and her mother demonstrate that plaintiff knew of the impending auction, and she could easily have called to confirm the date, but did not.

Nowhere in the record is the requisite atrocious, utterly intolerable conduct that would give rise to a claim of outrage.  *Kirby v. City of Tacoma*, 124 Wash. at 473.  Defendant's motion for summary judgment on this claim shall be granted.

## CONCLUSION

Defendant's motion for partial summary judgment (Dkt. # 56) is GRANTED in its entirety.  Plaintiff is bound by the limitations on liability set forth in her contract, such that her claims of negligence and conversion are barred, and her damages on other claims are limited to $5,000 where appropriate.   Plaintiff's claims of negligence, conversion, fraud, and intentional infliction of emotional distress are DISMISSED.

//

//

//

//

ORDER - 11

Dated this 6th day of September 2012.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER - 12